**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

GLORIA NICOL,                                              *

                Plaintiff,

       v.                                                   *          Civil Action No. AW-04-3039

HOLY CROSS HOSPITAL OF SILVER          *
SPRING, INC.,

               Defendant.                *

                            * * * * *

<u>**MEMORANDUM OPINION**</u>

Gloria Nicol ("Nicol" or "Plaintiff") brings this employment discrimination suit against Holy Cross Hospital of Silver Spring, Inc. ("Holy Cross" or "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Montgomery County Code. Plaintiff's Amended Complaint asserts claims of hostile work environment, disparate treatment on the basis of race/national origin, and retaliation. Currently pending before the Court is Defendant's Motion for Summary Judgment [36].  The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

I.      **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the non-movant. Plaintiff, a black female originally from Sierra Leone, began working for Holy Cross as a dietary aide in 1984. In 1989, Plaintiff applied and was hired for a position in Holy Cross's insurance billing department, where she was supervised by Donna Dolan ("Dolan"). Dolan, a white female, remained Plaintiff's immediate supervisor at all times relevant to this action.

1

Although Plaintiff entered the insurance billing department as a low level file clerk, she was promoted in 1991 to the position of insurance biller, responsible for checking the accuracy of insurance bills. In 1993, she became an insurance representative, with the additional responsibility of checking information directly with insurance companies. Plaintiff maintained the title of insurance representative until her termination in 2003.

While her first several years in the insurance billing department were largely uneventful, Plaintiff alleges that in 1995, Dolan began, on a daily basis, to massage Plaintiff's back. According to Plaintiff, she was subjected to these unwelcome massages "every day in the morning" until, in 1997, she informed Dolan that such contact made her feel uncomfortable. Once Plaintiff made her objections known, the back massages immediately ceased. However, Plaintiff contends that one Friday morning in 1998, Dolan "attempted" to touch her left breast. Plaintiff pushed Dolan's hand away, and was subsequently warned by Dolan to keep this incident secret. Plaintiff does not allege any further sexual harassment.

Over the next several years, Plaintiff received increasingly negative performance evaluations. Although her job performance had, in years past, been generally assessed as satisfactory, by 2001, Plaintiff was told that she was failing to meet expectations. Holy Cross attributes this change to the increased demands placed upon insurance billing employees following the implementation of a computerized financial system in 1999. This computerized system resulted in a decrease in paperwork and a corresponding decrease in staff, requiring those who remained to be able to do more with less people. In addition, heightened fraud and abuse requirements under federal and state law resulted in lower tolerance for errors in insurance billing.

Plaintiff, for her part, contends that her deteriorating performance evaluations resulted solely

from her rejection of Dolan's sexual advances. Whatever their genesis, it is undisputed that both verbal and written notices of unsatisfactory performance were issued to Plaintiff. On April 27, 2000, Plaintiff received a written notice of corrective action concerning her failure to properly prepare, address, and mail various insurance forms. On March 23, 2001, Dolan gave Plaintiff her 2000-2001 performance evaluation, which stated that Plaintiff needed improvement in numerous areas and that her billing error rate was unacceptable. Plaintiff refused to sign this evaluation. On April 4, 2001, Plaintiff received her second notice of corrective action, citing continuing errors in her work. Plaintiff again refused to sign this notice and was informed that she would be subject to termination if her performance did not improve. Plaintiff's 2001-2002 performance evaluation was also negative. On July 22, 2002, Plaintiff submitted a written memo in response to this evaluation, alleging that Dolan had discriminated against her on the basis of race and national origin. On August 30, 2002, Plaintiff was issued another corrective notice. She was told that her error rate of 11.7% was excessive and that she would have to reduce it to 5% or below. An additional notice followed on September 20, 2002, again citing Plaintiff's excessive error rate. On November 27 and December 13, Plaintiff met with Ingrid Karaboyas, Holy Cross's Employee Relations Consultant, to discuss the allegations of discrimination Plaintiff made in her July 22 memo. In a written summary of their meetings, Karaboyas noted that Plaintiff was unable to substantiate her allegations with any specific examples of discriminatory behavior. On December 23, 2002, Plaintiff received a final notice of corrective action, indicating that her error rate was an unacceptable 10.3%. Several months later, on May 9, 2003, Plaintiff was terminated on the basis of her inadequate performance.

Plaintiff maintains that Dolan's negative assessments were baseless and retaliatory. Plaintiff contends that she was singled out for abuse after she rebuffed Dolan's sexual advances, finding

herself regularly subjected to ridicule and harassment. In particular, Plaintiff alleges that Dolan

mocked her African-style clothing and foreign accent, assigned her more work than her fellow

employees, yelled at her, searched her desk, threw forms and mail at her face, monitored her

telephone calls, prohibited her from socializing with coworkers and from using the internet, ordered

her to stop listening to music through her headphones, and falsely accusing her of stealing postage

and boxes. Plaintiff complained to various officials at Holy Cross of this continuing harassment, yet

none of the individuals contacted took any response.

On September 23, 2004, Plaintiff filed suit in this Court. On November 4, 2005, Defendant

moved for summary judgment. In the interim, however, an unusual—and troubling—discovery

dispute transpired. During Plaintiff's initial deposition, on April 29, 2005, she indicated, for the very

first time, that she had kept a journal throughout the last six years of her employment with Holy

Cross, in which she recorded Dolan's alleged discriminatory conduct and harassment. Plaintiff also

indicated that she had transferred the contents of this journal, which was originally in paper form,

to a computer disk that she kept in her home. The deposition was then suspended so that Plaintiff

could produce both the original journal and the computer disk for inspection by Defendant. When

Plaintiff's deposition was reconvened on May 12, 2005, Plaintiff stated that she had, in fact,

discarded the journal in April 2003, shortly before her termination. Plaintiff explained that she found

it unnecessary to keep the original journal because its contents had been duplicated on the computer

disk. When further questioned by defense counsel, Plaintiff stated, unequivocally, that: (1) she

created and maintained the disk contemporaneously with the journal, updating the disk whenever

she made a new entry in the journal; (2) she created both the disk and the journal in 1997, updating

each of them until 2003; (3) she used only one disk throughout this entire period; (4) she did not

modify any of the files on the disk after April 2003.

Following this testimony, Defendant retained a computer forensics expert to examine the disk. He concludes in his report that Plaintiff was thoroughly dishonest in her May 12, 2005 deposition. For instance, although Plaintiff claimed that she began keeping the disk in 1997, Plaintiff's disk was not even manufactured until December 1999. In addition, the earliest system date on any of the disk's files was October 13, 2002. Furthermore, despite having stated, under oath, that she had not accessed the disk after April 2003, the expert found that the files on the disk were last modified on May 1, 2005—two days after Plaintiff's initial deposition.

In its Motion for Summary Judgment, Defendant argues that Plaintiff's apparent lying and bad-faith spoliation of evidence constitute adequate grounds to dismiss her complaint. Defendant also advances substantive defenses to all of Plaintiff's claims. Defendant's Motion is now ripe for review.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the

5

weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520

(1991) (internal citations omitted).  While the evidence of the non-movant is to be believed and all

justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material

fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152

F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.    ANALYSIS

### A.      Spoliation of Evidence

Defendant argues that by lying at her deposition and committing spoliation of evidence,

Plaintiff has essentially forfeited her claims. Plaintiff contends that there is no "concrete evidence"

that she was dishonest in her testimony or that she intentionally tampered with any critical evidence.

Plaintiff attempts to explain the conflict between her assertion that she began maintaining the disk

in 1997 and the defense expert's finding that the disk was not manufactured until 1999 by suggesting

that "[a] possible explanation for this is that Plaintiff started recording events on one disk in 1997

and thereafter transferred the documents to the disk that was first manufactured in December 1999."

(Pl.'s Opp. at 6.) This "possible explanation," however, is contradicted by Plaintiff's deposition

testimony, in which she unequivocally stated that she kept only one disk during the relevant time

period. Furthermore, Plaintiff does not support this "possible explanation" by any competent

evidence, such as an affidavit, rendering it little more than a hypothetical response. In addition,

Plaintiff is entirely unable to rebut Defendant's expert's finding that the files on the disks were not

created until October 2002, five years after Plaintiff allegedly began recording the contents of her

journal onto the disk. Plaintiff's Opposition states only that "[w]ith respect to Defendant's argument

that the system dates on the files indicate that no files on the disk were created until October 2002,

Plaintiff has no explanation. Plaintiff can only respond by reiterating that the files were created from 1997 through 2003." *Id.* Again, Plaintiff offers no admissible evidence, by way of deposition, affidavit, or expert testimony, to controvert Defendant's expert's findings.

Spoliation of evidence refers to the "destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Courts possess the inherent power to impose appropriate sanctions for spoliation, up to and including the outright dismissal of a lawsuit. *Id.* Because dismissal is the "ultimate sanction" for spoliation, it is only appropriate when (1) the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim. *Id.* at 593. In addition, false statements made during the course of a deposition can provide an independent basis for the dismissal of a party's claims. *See, e.g., Combs v. Rockwell Intern. Corp.*, 927 F.2d 486, 488 (9th Cir. 1987) ("Dismissal is an appropriate sanction for falsifying a deposition.").

In light of the abundant evidence of mendacity and evidence-tampering offered by Defendant, as well as the paucity, half-heartedness, and overall inadequacy of Plaintiff's response, the Court concludes that it would likely be within its discretion to summarily dismiss Plaintiff's suit. Dismissal, however, is appropriate only when lesser sanctions are inadequate to remedy a party's wrongful conduct. *See United States v. Shaffer Equipment Co.*, 11 F.3d 450, 463 (4th Cir. 1993) (reversing dismissal order upon finding that "district court's objective of punishing the wrongdoers, deterring similar future conduct, and compensating the defendant can be achieved by a sanction, short of dismissal, tailored more directly to those goals"). In addition, dismissal for spoliation is

most appropriate when the destruction of evidence severely prejudices the innocent party's case. *Silvestri*, 271 F.3d at 593. Here, Defendant has been able to submit ample evidence, separate and distinct from the journal and the disk, in support of its motion for summary judgment, and Plaintiff makes no attempt to rely upon the disk to substantiate her allegations. Furthermore, the parties have fully briefed their respective positions with regard to Plaintiff's substantive claims, and the law favors the disposition of litigation on the merits. As such, the Court will proceed to examine Plaintiff's claims.

### B.     Hostile Work Environment

Plaintiff asserts two independent hostile work environment claims. First, Plaintiff contends that Dolan's "unwanted sexual advances and physical touching" created a "severe and pervasive" hostile work environment. (Am. Compl. ¶ 20.) Second, Plaintiff alleges that she was subjected to a hostile work environment on the basis of race, national origin, and ethnicity. Although Plaintiff asserts claims under both Title VII and Section 1981, the same analysis applies under either statute. *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir. 1989).

In order to establish hostile work environment sexual harassment, a plaintiff must show: (1) that she was harassed because of her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; (4) that some basis exists for imputing liability to the employer. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 241 (4th Cir. 2000). "Conduct that is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 19 (1993).

In the instant case, Plaintiff alleges that from 1995 to 1997, Dolan regularly massaged her

8

back; once Plaintiff told Dolan that these massages made her feel uncomfortable, Dolan immediately

stopped. Plaintiff also alleges that on one occasion in 1998, Dolan attempted to touch her breast.

Even assuming her allegations as true for purposes of summary judgment, this Court has little

difficulty in finding that Plaintiff fails, as a matter of law, to allege an actionable claim of hostile

work environment sexual harassment. The conduct she complains of does not rise to the level of an

objectively hostile or abusive work environment. *See, e.g., Raley v. Board of St. Mary's County

Comm'rs*, 752 F. Supp, 1272, 1280 (D. Md. 1990) (summary judgment for defendant where

supervisor made sexual remarks and offensively touched plaintiff on two occasions). In addition,

assuming arguendo that Dolan's behavior created a hostile environment, there is no basis for

imputing liability to Plaintiff's employer. Plaintiff's admission that she never reported any sexual

harassment to anyone at Holy Cross (*see* Pl.'s 9/1/05 Dep. at 101-02) is fatal to her claim.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998).

　　　　With respect to Plaintiff's claims of hostile work environment on the basis of race and

national origin, the test is essentially identical to the one set forth above. Plaintiff must show (1) that

she was harassed because of her race or national origin; (2) that the harassment was unwelcome; (3)

that the harassment was sufficiently severe or pervasive to alter the conditions of employment and

create an abusive atmosphere; (4) that some basis exists for imputing liability to the employer.

*Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). As with her sexual harassment claim, Plaintiff's

allegations of harassment on the basis of race and national origin are insufficient to state a *prima

facie* case.

　　　　A hostile workplace environment is sufficiently severe and pervasive "[w]hen the workplace

is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 18 (1993). In assessing the severity of a workplace environment, courts should consider the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance. *Daso v. Grafton Sch., Inc.*, 181 F.Supp.2d 485, 492 (D. Md. 2002).

Plaintiff alleges that she was subjected to a hostile work environment when Dolan made negative comments about her accent and style of dress, changed her job duties, yelled at her on several occasions, searched her desk, threw forms and mail at her face, monitored her telephone calls, prohibited her from socializing with coworkers and from using the internet, ordered her to stop listening to music through her headphones, and falsely accusing her of stealing postage and boxes.

In this case, the Court finds that Plaintiff's allegations of harassment are not sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. Plaintiff does not allege constant harassment but rather a series of sporadic incidents, occurring over the course of many years. In addition, none of these incidents are physically threatening or humiliating, with the possible exception of Plaintiff's allegation that Dolan "threw things at her face." At her deposition, however, Plaintiff conceded that Dolan never actually threw anything at her, but merely tossed work and papers on her desk. Her other allegations also fail to withstand close scrutiny. For example, although Plaintiff complains that Dolan searched her desk, Plaintiff admits that her desk was out in the open amidst numerous cubicles, was unlocked, and that the searches had to do with uncompleted work and office supplies. Similarly, in light of Plaintiff's

performance difficulties, any restrictions that may have been placed on her phone and internet use,

or her opportunities to socialize with coworkers, hardly seem unreasonable. Taken as a whole,

Plaintiff's complaints concern generally applicable policies or "non-actionable office

unpleasantries," and, as such, do not rise to the level of an objectively abusive work environment.

*Von Gunten v. Maryland*, 243 F.3d 858, 867-70 (4th Cir. 2001) (no hostile work environment where

plaintiff's employer hyper-scrutinized her sick leave, required doctor's notes for medical leave,

followed her around and questioned her activities, and downgraded her performance evaluation).

### C.   Disparate Treatment

Plaintiff argues that she was discriminated against on the basis of race and national origin.

A plaintiff lacking direct evidence of discrimination may utilize the three-part burden shifting test

outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Price v. Thompson*, 380

F.3d 209, 212 (4th Cir. 2004). Under *McDonnell Douglas*, a plaintiff must first establish a *prima*

*facie* case of discrimination, whereupon the burden shifts to the employer to demonstrate a

legitimate, non-discriminatory reason for the action. *McDonnell Douglas*, 411 U.S. at 802. The

plaintiff may then rebut the employer's proffer by proving by a preponderance of the evidence that

the employer's legitimate non-discriminatory reason is actually a pretext for discrimination. *Id.* at

804. A plaintiff can prove pretext by showing that the employer's explanation is "unworthy of

credence," or by offering other forms of circumstantial evidence sufficiently probative of

discrimination. *Id.* This framework is applicable to Plaintiff's claims under Title VII, § 1981, and

the Montgomery County Code. *See Lewis v. Cent. Piedmont Cmty. Coll.*, 689 F.2d 1207, 1209 n.3

(4th Cir. 1982); *King v. Marriott Int'l, Inc.*, 195 F. Supp. 2d 720, 723-25 (D. Md. 2002).

In order to establish a *prima facie* case of employment discrimination, Plaintiff must show

that: (1) she is a member of a protected class; (2) she had satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Plaintiff has met the first and third prongs of a *prima facie* case—she is a member of a protected class, and her termination constitutes an adverse employment action. Defendant argues, however, that Plaintiff is unable to establish that she performed her duties in a satisfactory manner. Defendant cites the numerous performance evaluations and corrective action notices that Plaintiff received in 2001-2003, which, taken as a whole, demonstrate Plaintiff's inability to meet the requirements of her job. Plaintiff responds by offering the deposition testimony Ms. Catherine Pharr ("Pharr"), a coworker, who opined that Plaintiff's job performance was no worse than that of any of the other insurance representatives, that Dolan was exaggerating Plaintiff's deficiencies, and that Plaintiff was occasionally blamed for errors that were actually made by Pharr.

The Court finds that Pharr's testimony is insufficient to overcome the substantial evidence of Plaintiff's inadequate performance proffered by Defendant. Pharr did not exercise supervisory authority over Plaintiff, nor was she in a position to directly evaluate, or make decisions concerning, the quality of Plaintiff's work. "It is the perception of the decision maker which is relevant to the question of [job performance], not the opinions of [plaintiff's] coworkers or other third parties." *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 444 (4th Cir. 1998); *see also King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2002) ("Proof that [plaintiff's] performance was comparable to his coworkers' is not proof that [plaintiff's] performance met [employer's] legitimate job performance expectations."); *Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("The alleged opinions of [plaintiff's] coworkers are as to the quality of her work are [] close to irrelevant."). Thus,

Plaintiff's failure to offer competent evidence indicating that she met her employer's legitimate job

performance expectations is fatal to her discrimination claim.

Furthermore, even if Plaintiff had established a *prima facie* case of discrimination, she would

be unable to show that Defendant's legitimate, nondiscriminatory reason for her discharge—namely,

her unsatisfactory performance—was merely pretextual. As evidence of pretext, Plaintiff cites a

handful of incidents in which Dolan commented on her accent and African-style clothing. These

isolated comments, even if taken as true, as insufficient to demonstrate that the decision to terminate

Plaintiff was the result of discriminatory animus. Stray remarks unrelated to the decision-making

process are insufficient to sustain a claim of discrimination. *See Price Waterhouse v. Hopkins*, 490

U.S. 228, 277 (1989).

### D.    Retaliation

When a plaintiff brings a case of retaliation based on circumstantial evidence, courts must

apply the three-part proof scheme outlined in *McDonnell Douglas*. A plaintiff must first establish

a *prima facie* case of retaliation, by proving that: (1) she engaged in protected activity; (2) her

employer took adverse employment action against her; and (3) a causal connection existed between

the protected activity and the adverse employment action. *Carter v. Bell*, 33 F.3d 450, 460 (4th Cir.

1994). Once the plaintiff employee has set forth a *prima facie* case, the employer may articulate a

legitimate nondiscriminatory reason for its employment decision, which the plaintiff must then rebut

as pretextual.

Defendant does not dispute that Plaintiff engaged in protected activity when, beginning in

2001, she complained to several managers at Holy Cross regarding Dolan's allegedly discriminatory

treatment, or that Plaintiff was subjected to an adverse employment action when she was terminated

in 2003. Defendant argues that Plaintiff is unable to establish a causal connection between her complaints and her subsequent termination. Defendant further contends that even if Plaintiff could demonstrate a causal connection, and thereby make out a *prima facie* case, Plaintiff still cannot show that Defendant's legitimate, non-discriminatory reason is pretextual. The Court agrees, finding that even if Plaintiff were able to set forth a *prima facie* case, Plaintiff has presented no evidence that Defendant's proffered rationale for her dismissal—namely, Plaintiff's inadequate performance—was a pretext for retaliation. Plaintiff's sole argument in this regard is that her performance evaluations deteriorated after she rebuffed Dolan's alleged sexual advances in 1997. There are several reasons why this argument is unpersuasive. First, although Plaintiff claims to have communicated to Dolan that her sexual advances were unwelcome, Plaintiff has acknowledged that she never complained to anyone at Holy Cross regarding Dolan's alleged sexual harassment. Thus, although Plaintiff engaged in protected activity when she complained to her supervisors of discrimination, she never did so in connection with her claim of sexual harassment. In addition, the temporal gap between Plaintiff's rejection of Dolan's alleged sexual advances, in 1997, and Plaintiff's negative performance evaluations, which commenced in 2000-2001, undercuts the possibility that the latter resulted from lingering ill-will over the former. Finally, Plaintiff has failed to address, acknowledge, or refute Defendant's assertion that the position of insurance representative grew more demanding with the implementation of a computerized billing system in 1999, and that changing job requirements, rather than retaliation, underlay Plaintiff's steadily deteriorating performance assessments. In sum, Defendant has articulated a legitimate, nondiscriminatory rationale for Plaintiff's dismissal, which she does not rebut with sufficient evidence of pretext. Accordingly, Plaintiff's retaliation claim also fails.

**IV.**     **CONCLUSION**

For all of the reasons stated above, Defendant's Motion for Summary Judgment [36] is

GRANTED. An Order consistent with this Opinion will follow.


<u>April 27, 2006</u>                                         <u>        /s/        </u>
Date                                                       Alexander Williams, Jr.
                                                           United States District Judge